UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:11 CR 246 CDP |
| JERRY ELKINS(12), | ) | |
| Defendant. | ) | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, and SENTENCING OPINION

At the April 16, 2013 sentencing hearing, I imposed a 210 month sentence on defendant Jerry Elkins. This opinion sets out my findings of fact on contested factual issues, my conclusions of law regarding the advisory sentencing guidelines, and my rationale for selecting the sentence. My findings are based on the preponderance of the evidence presented at trial. To the extent Elkins adopts by reference the objections filed by other defendants, I will make specific findings only on the general objections that might relate to him or to the WOS structure in general. Except as set forth here, I adopt the findings of fact and legal conclusions set out in the final presentence report (PSR) [docket # 1456]. The numbering below corresponds to the paragraph numbers in the PSR.

25 - 53.  Defendant's general objection that the offense conduct section of the PSR is biased in favor of the government is overruled, and the

offense conduct section is accurate except as noted here.  Because this defendant was convicted of a RICO conspiracy, it is appropriate for the PSR to set out the scope of the conspiracy, even though Elkins may not have been personally involved in some of the acts of co-conspirators.

25.     Elkins was not involved in the WOS until sometime in 2009.  Paragraph 25 is otherwise accurate.

27.     The phrase "*and enrich the members and associates through criminal activity*" is stricken from Paragraph 27.  Paragraph 27 is otherwise accurate.  Members paid dues, and some members sold drugs and guns, but there was no evidence that this money-making criminal activity was a specific purpose of the organization.

28.     The last sentence of paragraph 28 is stricken, and the following sentence is inserted in its place: "*A small percentage of WOS members have achieved 1%er or diamond status, which is a term used to describe members of OMGs who are represented to others as being members who routinely engage in significant criminal activity.*"  Paragraph 28 is otherwise accurate.  The evidence showed that wearing a 1%er or diamond patch was a status symbol conferred more by reason of rank or favor within the organization than because of criminal activity.  The evidence also showed that WOS members intended that 1%er or

diamond patches be perceived by others as evidence that the wearer routinely engaged in criminal activity. Elkins was the President of the Denver, Colorado Chapter of the WOS, and was Regional Vice President of the Western Region.

38, 39, 41.   Paragraphs 38, 39 and 41 are stricken.

40.   Paragraph 40 is accurate. Elkins objects that he was not charged with a crime arising out of this incident, and that the co-defendant who was charged, Marshall Fry, was acquitted. Uncharged or acquitted conduct may be used at sentencing. On August 2, 2010, Jerry Elkins and several other WOS members (some of whom were from the California chapter) drove to the Hell's Lovers clubhouse in Denver and were making noise; Marshall Fry, a member of the Denver chapter, fired a gun in the direction of the clubhouse. Although Jerry Elkins, as President of the Denver chapter, approved the drive by of the rival clubhouse, he did not direct or order Fry to shoot at the clubhouse, and in fact, the evidence showed that he and several others had left the scene and were approximately a block away when the shots were fired. This incident is proper for me to consider when considering the overall acts of the conspiracy, but I have not used it in calculating the sentencing guidelines.

48.   Paragraph 48 accurately sets out the evidence that was presented at trial.

52. Paragraph 52 accurately sets out the government's contentions about culpability levels, but I am not adopting these contentions. It is not necessary for the court to determine precise culpability levels among the 22 defendants in this case.

54 - 62. The victim impact paragraphs of the PSR are accurate and it is appropriate to include in the PSR descriptions of the impact on all victims of the conspiracy, even though Elkins was not directly responsible for the losses to any identifiable victims.

63, 66 - 85. Guidelines Calculations:

The guideline provision for racketeering, U.S.S.G. § 2E1.1, directs that the base offense level is 19 or the offense level applicable to the underlying racketeering activity. The PSR used two groups of underlying activity.

Group 1, in Paragraphs 67 - 72 is based on the January 29, 2011 murder conspiracy in East St. Louis. As accurately described in paragraph 46 of the PSR, Elkins conspired with others to kill members of the Outkast gang when they attended a party known as Black New Years. Elkins and Allen Hunter were in Chicago, and from there directed the activities of the others, including attempting to obtain an assault weapon. For this group, the PSR uses a base offense level of 33 from § 2A1.5(a), and adds a 3 level enhancement under §

3B1.1(b) based on Elkins' role in the offense, and then adds a two level enhancement under § 3C1.1 for obstruction of justicefor.  I agree that Elkins was a leader or organizer and the activity involved more than five participants, so the 3 level enhancement under § 2A1.5(a) is appropriate.  I also agree that the 2 level enhancement for obstruction of justice under § 3B1.1(b) is appropriate, albeit for a different reason that stated in the PSR and urged by the government.

I do not believe that Elkins' testimony at the suppress hearing is a basis for this enhancement, but I do agree that his attempt to bribe the officers who stopped him in Chicago on January 28, 2011 (by telling them they could just keep the gun and money seized if they let him go) constitutes an attempt to obstruct justice so the enhancement applies.  Therefore, Paragraph 63 is amended to read, in its entirety:

63.  "*The defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administrtion of justice when the defendant offered a bribe to the law enforcement officers who stopped him in Chicago on January 28, 2011.*"

Paragraph 72 therefore correctly calculates the adjusted offense level for for group 1 as 38.

Group 2, in Paragraphs 73 through 78 is based on Conspiracy to Commit

murder in aid of racketeering activity, and defendant argues that there was no evidence at trial that would support a second racketeering act. The government argued that this calculation (and the RICO conspiracy conviction itself) can be based on Elkins' involvement in the Hell's Lovers shooting in Denver on August 2, 2010, but as set out in my findings with regard to paragraph 40, I do not believe that Elkins can be held responsible for a conspiracy or attempted murder for that event. I do believe he can be held responsible for the "Corndog" murder conspiracy described in paragraph 48, however, and so I conclude that Paragraphs 73 through 78 are properly based on that conduct, and that the base offense level of 33 in Paragraph 73 is correct. Elkins was a leader or organizer of that activity, but the evidence did not show that five or more participants were involved, so the correct role in the offense enhancement for this group is only 2, under § 3B1.1(c). Paragraph 76 is therefore corrected to apply only a 2 level enhancement. His obstruction of justice in 2011 had nothing to do with this racketeering act, and so I sustain the objection to the two level enhancement under § 3C1.1 in Paragraph 77. The Adjusted Offense Level subtotal for Group 2 is thus 35.

When the multiple count adjustments required by § 3D1.4 are applied, however, the Combined Total Offense Level remains at 40 as set out in

Paragraphs 82 and 85. This is because each of the groups receive 1 unit, since the offense with the lesser total (35) is 1 to 4 levels lower than the offense with the higher level (38). *See* § 3D1.4(a).

Despite my sustaining some of Elkins' objections, therefore, the guidelines conclusions set out in Paragraph 128 are correct: for total offense level 40 and criminal history category II, the guidelines imprisonment range is 324 - 405 months. Because the statutory maximum (if the sentences for the two counts of conviction run concurrently) is 30 years, the guidelines range becomes 324 to 360 months.

The Sentence Imposed

The government urged that I impose a sentence within the 324 - 360 month guidelines range. I sentenced Elkins to a term of 210 months. This is a variance from the guidelines range based on my consideration of all the factors under 18 U.S.C. § 3553(a). As I stated at the sentencing hearing, I believe the guidelines application in Elkins' case, while correct, overstate the seriousness of his actual involvement. Unlike other defendants in this case, there is no evidence that Elkins himself ever actually shot anyone. There is no evidence that anyone he directed to commit a murder actually did so. In the case of the Corndog matter, although I believe he is guilty of conspiracy, the likelihood that

it would actually go forward and be completed was always extremely slim. Similarly, although he and Allan Hunter directed the East St. Louis actions from their safe perch in Chicago, the likelihood of that conspiracy actually succeeding was also always slim. Elkins is very lucky that the co-conspirators did not actually carry out these events. They are very serious crimes, but when compared to conduct of other defendants in this case and other defendants in similar cases who are similarly situated, a sentence in the guidelines range would give rise to unwarranted sentencing disparities.

A sentence of 210 months is a long sentence for a man who is already 50 years old, and he does not have a serious prior conviction record. This sentence will provide just punishment and should also provide deterrence. Defendant is a cocaine addict, so his life has not been without crime, but he has held responsible jobs and has supported his family throughout his life. He had an extremely deprived childhood, being raised by alcoholic and abusive relatives. He was abused both physically and mentally, and additionally witnessed traumatic violent acts as a child. Despite this background, he served two different stints in the United States Army: during the first term, he received commendations, but during the second he assaulted an officer and was demoted and barred from re-enlisting, although he did receive an honorable discharge. He began using drugs

and alcohol at an extremely young age, and has been treated for mood disorders in the past, and attempted suicide when he was 12. These personal factors indicate that he can benefit from treatment while incarcerated, and his successful work history shows that he is likely to be rehabilitated.

When all the factors under § 3553(a) are considered, I believe that the sentence of 210 months is sufficient, but not greater than necessary, to meet the sentencing objectives of the statute.

**IT IS HEREBY ORDERED** that the Clerk of Court shall docket this opinion separately in the public file, and shall also attach a copy of it to the Presentence Report that is filed under seal, so that it will accompany the report that is provided to the Bureau of Prisons or is otherwise lawfully disseminated. The Clerk of Court shall also attach a copy of this Opinion to the sealed Statement of Reasons.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of April, 2013.